STERN v. STERN.

(Supreme Court, Appellate Division, First Department. December 13, 1907.)

**1. CORPORATIONS — SALE OF STOCK — CONTRACTS—RESCISSION—ACTIONS—COMPLAINT—SUFFICIENCY.**

Plaintiff alleged that at the instance of defendant's decedent he subscribed for certain shares of stock and paid decedent therefor; that, to induce plaintiff to purchase the stock, decedent fraudulently represented that he and others had organized the corporation of which he was a director, etc., to acquire furnace property and to mine, manufacture, etc., iron ore or pig iron; that the stock would be a splendid investment, well knowing that it would diminish in value and become comparatively worthless; that the company would produce 60,000 tons of ore and pig iron annually, from which it would pay dividends, whereas it was incapable of producing that quantity of ore and had paid but one dividend, and that out of capital; that decedent was personally familiar with all the facts concerning which he made the representations; and that plaintiff duly tendered back the stock and demanded the return of the consideration paid, etc. *Held*, that the complaint stated a cause of action on the theory of rescission.

**2. WITNESSES — COMPETENCY — ACTION AGAINST REPRESENTATIVE OF PERSON DECEASED.**

In an action against an executrix to recover the price of stock paid defendant's testator by plaintiff on the ground of fraudulent representations, a witness for plaintiff testified that he heard a conversation between plaintiff and decedent in which he participated. It appeared that the witness agreed on the day of the conversation to purchase part of the stock from plaintiff, and on receipt of the stock paid plaintiff therefor, but that the purchase was later rescinded, and that witness had no interest in any of the stock or in the result of the litigation. *Held*, that the witness was not incompetent to testify as to the conversation, under Code Civ. Proc. § 829, relating to testimony by a witness as to his transactions with a decedent in an action against the executor.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 50, Witnesses, §§ 663, 664.]

Ingraham and Scott, JJ., dissenting.

Appeal from Trial Term.

Action by Benjamin Stern against Sarah Stern, as executrix, etc. From a judgment dismissing his complaint, plaintiff appeals. Reversed.

Argued before PATTERSON, P. J., and INGRAHAM, LAUGHLIN, CLARKE, and SCOTT, JJ.

William M. Bennett, for appellant.
Charles E. Rushmore, for respondent.

LAUGHLIN, J. The action was brought originally against Simon H. Stern, and upon his death his executrix was substituted. The

allegations of the complaint tend to present two theories of liability: (1) For deceit by decedent in selling and delivering his own stock in the Pennsylvania Furnace Company to plaintiff, instead of stock in the same company which he induced plaintiff to agree to subscribe for, and led plaintiff to believe had been subscribed for, in his behalf therein; and (2) for the recovery of the purchase price paid for the stock upon the theory that its purchase was induced by false and fraudulent representations, upon the discovery of which the contract had been rescinded and the return of the stock tendered and a return of the purchase price demanded. Upon the first theory no recovery could be had, for no damages were shown, and, as the stock delivered and accepted all stood in the name of the decedent, plaintiff was chargeable with knowledge of his ownership. The plaintiff, however, upon the trial, in effect elected to stand upon the second theory, although his counsel made some claims not essential thereto which tended to obscure the real issue.

It is claimed at the outset that the complaint fails to state a cause of action upon the theory of rescission. I am of opinion that it is sufficient. It is alleged that plaintiff knew the decedent to be a man of character and pecuniary responsibility in whom he had full confidence; that on or about the 1st day of May, 1899, plaintiff, at the instance of decedent, subscribed for $100,000 of the capital stock of the Pennsylvania Furnace Company and paid decedent $50,000 therefor; that, with a view to inducing plaintiff to purchase said stock, decedent made false and fraudulent representations to plaintiff, in substance as follows, all of which plaintiff believed and relied upon, and all of which were false to the knowledge of decedent, to wit: That decedent represented to plaintiff in May, 1899, that he and others had organized the Pennsylvania Furnace Company, of which he was a director, shareholder, and largely interested, to acquire iron ore rights and furnace property in Pennsylvania, and to mine, manufacture, and sell iron ore or pig iron; that "the company was the biggest thing ever gotten up"; that stock in the company at $50 per share would double in value and probably be worth three times as much, and would be a splendid investment, well knowing at the time that it would diminish in value and become comparatively worthless; that the company was capable of and would produce 60,000 tons of ore and pig iron annually, from which it would pay dividends, whereas the company was incapable of producing and never produced that quantity of ore annually or paid but one dividend, and that was paid out of capital and not out of profits. It is further alleged that decedent was personally familiar with all the facts relating to the property concerning which he made the representations, for he owned it individually until the organization of the company on the 18th day of September, 1899, and then on September 22, 1899, by deed conveyed and transferred it to the company for $3,000,000; the property being actually worth not more than $250,000. It is further alleged that plaintiff duly tendered back the stock and demanded the return of the consideration paid, together with interest thereon. The allegations fully set forth that the purchase of the stock was fraudulently induced by material false representations. It was conceded that decedent sold and delivered his own stock to plaintiff, and recovered and returned the consideration therefor.

One Isaac Stern, brother to plaintiff, was called as a witness in his behalf and testified that he was present and heard a conversation between plaintiff and decedent, in which he participated, the latter part of April or beginning of May, 1899, in the private office of Stern Bros. over their dry goods store on West Twenty-Third street, New York. He was asked to state the conversation. Counsel for decedent asked leave to examine him preliminarily, and developed the fact that he agreed, the day of the conversation, to purchase from plaintiff $20,000 of the stock and subsequently paid him therefor, after receiving it, but that the purchase was rescinded by mutual agreement, and he returned the stock to plaintiff, and received his money back, and had no interest in any of the stock or in the result of the litigation. Counsel for decedent thereupon objected to the conversation on the ground that the witness was incompetent, under section 829 of the Code of Civil Procedure, upon the theory that plaintiff had derived his title through the witness. The objection was sustained and counsel for plaintiff duly excepted. The court ruled broadly that the witness was not competent to testify to any conversation between the parties, and, in effect, informed counsel that it was unnecessary to ask specific questions relating to the conversation limiting it to the stock which plaintiff did not sell to the witness; and counsel for plaintiff again excepted. This evidence was clearly competent. The witness did not purchase any of the stock of decedent. He was as competent to testify to the conversation as if he had never purchased any of it from plaintiff. The fact that he purchased part of it from plaintiff, and subsequently rescinded the contract and returned it, left the case as if he had never purchased it. Plaintiff's cause of action against decedent was in no manner derived through the witness. He stands upon the original transaction. Of course, he could only rescind in so far as he held the stock; but he did hold most of it all the time, and presumably, on his allegations, he held it all when he elected to rescind. However, that would only go to the quantum of the recovery, and would not affect the existence of his cause of action on account of the stock which he did not transfer to the witness. Plaintiff was thus erroneously deprived of an opportunity to present his evidence of fraudulent representations and develop his case; for, of course, he was incompetent to give the evidence himself, and a new trial must be awarded.

The judgment should be reversed, and a new trial granted, with costs to appellant to abide the event.

PATTERSON, P. J., and CLARKE, J., concur.

INGRAHAM, J. (dissenting). While the complaint contains allegations of many statements of the defendant's testator in relation to the future value of the property that was to be acquired by the corporation and of the stock which plaintiff purchased, and enthusiastic and as it subsequently appeared, exaggerated estimates of the advantages that would accrue to the stockholders of the company in consequence of the future operations of the company, there is but one statement of a fact that was made by the defendant's testator upon which the plaintiff

could base an action for fraud or for a rescission of the contract, and that was the alleged statement by the plaintiff that "the said company was capable of and will produce 60,000 tons of ore and pig iron annually, from which said company would pay dividends." Assuming that all of these representations alleged in the complaint were made by the defendant's testator to induce the plaintiff to purchase the stock, this statement by the defendant's testator was the only representation of the existence of a fact upon the falseness of which this action in either aspect could be based. There was no proof offered on the trial that this statement was not true, nor did the plaintiff claim upon the trial that he had evidence to prove it was false. After the testimony of the plaintiff's brother as to the interview between the plaintiff and the defendant's testator was excluded, plaintiff went on to prove his case by other testimony, and he offered all the testimony that he desired in relation to the falsity of the statement made. If the testimony of plaintiff's brother as to the statement of the defendant had been admitted, it would only have established the representation made, as alleged in the complaint, and in the absence of proof to justify a finding that this statement was false I think the court could do nothing but dismiss the complaint.

All of the other alleged representations related to what the defendant's testator expected that the corporation would accomplish. Statements that the company was "the biggest thing ever gotten up," that the shares of stock "would double in value and would probably be worth three times as much," and that the stock of the company "was a splendid investment for the plaintiff," were certainly not representations upon which a cause of action for fraud or for a rescission of a purchase of the stock would be based. The further allegation that the plaintiff supposed that he was subscribing for this stock assumed that he had understood that he was obtaining it from the company at 50 cents on the dollar, when in fact the defendant was selling him his own stock, could not justify a verdict for the plaintiff. In the first place, the plaintiff must have known that there could be no subscription of the company's stock at less than par. If the plaintiff had subscribed for the issue of stock by the company, that subscription would necessarily be at par, and not 50 cents on the dollar, and upon such subscription, whatever the subscriber paid, he would be liable to the company for the par value of the stock. But, when the stock was delivered to the plaintiff by defendant's testator, it showed upon its face that it was defendant's testator's stock, and that it stood in his name upon the books of the company; for that fact appeared upon the face of the certificate delivered to the plaintiff. He accepted those certificates as a compliance with the contract, and paid the defendant's testator for the stock, retained the stock, and received the dividends; and it is too late for him, years afterwards, to attempt to disaffirm the purchase upon the ground that the stock was the defendant's testator's stock, and not that of the company, issued as the result of his subscription to the capital stock of the company. It is evident that by this transaction the plaintiff, who had confidence in the judgment of the defendant's testator, entered into a speculation in acquiring this stock which he thought would result in large profit. This conclusion quite probably

was based upon the enthusiastic and exaggerated idea of the defendant's testator as to the result of the speculation; but I think it is quite clear that there was no fraud in the transaction to justify this action.

I think, therefore, that the judgment appealed from should be affirmed.

SCOTT, J., concurs.